1
2
3
4
5
6
7

8  **UNITED STATES DISTRICT COURT**

9  **CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

10
11
12

13 JOANN WEDLAW,                         )        Case No.: CV 08-00051 SH
                                         )
14            Plaintiff,                 )        MEMORANDUM OPINION
                                         )        AND ORDER
15 v.                                    )
                                         )
16                                       )
   MICHAEL J. ASTRUE,                    )
17 Commissioner of Social Security,      )
                                         )
18            Defendant.                 )
19 _____)

20

21                              I. PROCEEDINGS

22        Plaintiff filed an Application for Supplemental Security Income (SSI) benefits on August

23 30, 2005, which Application was denied initially and upon reconsideration.  A hearing before an

24 Administrative Law Judge ("ALJ") was held on March 12, 2007.  Following receipt of a

25 Decision denying benefits, plaintiff sought review to the  Appeals Council.  The Appeals Council

26 declined review on December 17, 2007.  This action followed. The parties filed a Joint

27 Stipulation, and have consented to the jurisdiction of the magistrate judge. Plaintiff makes two

28

                                            1

claims of error. For the reasons shown below, the Commissioner's decision denying benefits is affirmed.

## II. DISCUSSION

ISSUE NO. 1:

Plaintiff asserts that the ALJ improperly evaluated whether plaintiff met or equaled Listing 1.02.  First, Plaintiff asserts that she meets or equals the requirements of Listing 1.02 because in 2001 she was found to have degenerative joint disease of the right knee, and in 2005 she was found with the inability to walk on uneven terrain.  Plaintiff also asserts that her right ankle, which she fractured and had surgery on prior to 2005, causes problems that contribute to her disability.  Thus, according to plaintiff, the dysfunctions in her right knee and ankle resulted in the inability to ambulate effectively.

Second, plaintiff asserts that because she suffers from obesity, the ALJ should have considered it as a factor in determining whether she meets or equals Listing 1.02. Plaintiff asserts that the ALJ's awareness of plaintiff's weight at the hearing, and the absence of  discussion regarding obesity in his decision, indicates that he failed to satisfy his burden.

Listing 1.02 requires the following:

"1.02 *Major dysfunction of a joint(s) (due to any cause):* Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:

A. Involvement of one major peripheral weight-bearing joint (*i.e.* , hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b[.]" 20. C.F.R. § 404, Subpart P, Appendix 1 § 1.02.

///

///

2

Plaintiff's Right Knee Condition

The record indicates that at least from 2001 to the time of the hearing in 2007, plaintiff's primary place of diagnosis and treatment was the Martin Luther King Jr./ Drew Medical Center ("MLK").  On January 11, 2001, Dr. J. Owens and Dr. A. Boorman, physicians from MLK, jointly prepared a reading of the AP and lateral views of the right knee.  They found plaintiff's bone mineral density and bony trabecular pattern to be within normal limits; no acute fractures, sublaxations, or dislocations; anatomic alignment; unremarkable soft issue structures; and the absence of radiopaque foreign bodies. AR 153. The findings also noted asymmetric narrowing of the femoral tibial compartments, with lateral being greater than medial, as well as osteophytes on the tibial eminences.  Based on these findings, the doctors concluded an impression of degenerative joint disease of the right knee. AR 153.

On July 20, 2001, Dr. J. Owens and Dr. Thuyen Tran, also a MLK physician, prepared a reading of x-rays of both knees.  They found moderate narrowing of the lateral compartments of both the left and right knee; mild narrowing of the medial compartments of both the left and right knee; moderate narrowing of the patellofemoral spaces bilaterally; spurring of the tibial eminences bilaterally; bony structures that demonstrate a normal density and trabecular pattern; no fractures, sublaxations, or dislocations; no intra-articular loose bodies and no foreign body; and that the soft tissues appear normal.  Based on these findings, the doctors concluded an impression of degenerative joint disease of both knees. AR 144.

On June 6, 2005, Dr. Satish Kadaba of East West Medical Group conducted a complete orthopedic evaluation of plaintiff at the request of the Department of Social Services. AR 78. There were no medical records available for review at this appointment.  Dr. Kadaba performed a physical examination regarding all areas of complaint. Specifically regarding the right knee, he found that the flexion was 0-140°, but otherwise normal . AR 81.  Dr. Kadaba noted crepitation on the right patella and pain on range of motion of the right knee.  Dr. Kadaba also noted that there was a "smooth range of motion of all the joints."  Further, there was "no swelling, erythema, subluxation or contractures." Id.

On October 17, 2005, plaintiff was given an arthritis evaluation at Rancho Los Amigos National Rehabilitation Center ("RLA") at the request of a MLK physician. AR 111, 114. X-rays of plaintiff's knees were examined as a part of the evaluation. AR 117.  Dr. Robert Martin Zeit, who conducted the medical imaging consultation, found no fracture or dislocation; no visible narrowing of joint space; no erosive change or osteophytes; no abnormality of the patella; and no visible soft tissue abnormality.  Further, Dr. Zeit stated that standing films show no evidence of varus or valgus deformity.  His impression was that no abnormality is seen and the study is within normal limits. Id.  There are no additional medical data in the record subsequent to October 2005 regarding further examination of the right knee.

Plaintiff's Right Ankle Condition

As for the plaintiff's ankle problem, the data in the record is sparser. In February 2005, x-rays of plaintiff's right ankle were evaluated by Dr. Janis Owens, a MLK physician. AR 108. Dr. Owens' findings were:

> "AP, lateral, and oblique views of the right ankle demonstrate the bony structures to be of a mild decreased density in the periarticular region. There is a six-hole plate with three proximal and two distal screws over the lateral aspect of the diaphyseal-metaphyseal region fixing a nondisplaced fracture.  There is a screw in the fibula parallel to the plate at the #4 position.  The joint spaces are unremarkable. There is soft tissue swelling of the ankle. Old films were obtained; however, no prior ankle films are available for comparison." AR 108.

Based on the findings, Dr. Owens' impression regarding was (1) status post open reduction and internal fixation of a right ankle lateral malleolus fracture, and (2) mild disuse osteoporosis. Id. This is the only x-ray evaluation in the record regarding plaintiff's right ankle.

There are various places in the record that briefly mention plaintiff's right ankle as part of plaintiff's patient history. In progress notes from July 2005 from MLK mention the right ankle briefly. It is noted that plaintiff complained of right ankle pain, and among other things, that it is "well healed[.]" AR 95, 96.

In the summary report by Dr. Kadaba regarding the complete orthopedic evaluation performed on June 6, 2005, the history of right ankle fracture is noted.  The examination noted that the left ankle is "normal," and the right ankle dorsiflexion was "0-10º and platar flexion 0-30º." AR 81. Dr. Kadaba's diagnosis in relevant part was "status post right ankle fracture." AR 82.

On October 17, 2005, during the arthritis evaluation at RLA, plaintiff was examined by Dr. Emy C. Chen. Progress notes from this evaluation briefly mention plaintiff's ankle surgery and inserted pin. AR 114, 115. Dr. Chen states in the opinion letter,  Patient's right ankle is swollen with old surgical scars well healed. Patient's ankle is slightly tender to palpation." AR 112. Subsequently in the record, progress notes from a September 2006 visit to MLK mentions in passing the ankle and the inserted pin. AR 129.

While it is undisputed that plaintiff did indeed have surgery on her right ankle and a pin was inserted[1], there is little discussion of any actual and specific functional limitation related to the treated ankle.  Aside from plaintiff's general complaint of pain at various consultations and the history of the fracture, there is nothing in the doctors' assessments that show a functional limitation rising to the level of a listed disability.  In fact, the various assessments indicate that plaintiff's right ankle sufficiently recovered from the fracture and surgery, and no remarkable limitation has arisen from the inserted pin.

Taken altogether, the objective medical evidence does not support the degree of severity claimed by plaintiff for either the right knee or the ankle. The ALJ accepted Dr. Kadaba's opinion in rendering his Decision. Dr. Kadaba's opinion, which was based on a complete orthopedic evaluation, was that:

---

[1]   Throughout the record, there is some confusion about the date of the ankle surgery. According to plaintiff's undated Social Security Administration Disability Report form, for which plaintiff provided information, plaintiff had ankle surgery and received treatment at Riverside Medical Center in November and December of 2004. AR 52. MLK progress notes indicate that plaintiff had right ankle fracture in November 2004. AR 109.  Progress notes from the arthritis evaluation at Rancho Los Amigos indicate plaintiff broke her ankle and inserted a pin both in 1994 and in 2000. AR 114, 115.  In describing the plaintiff's patient history in the opinion letter, the consulting physician from Rancho Los Amigos mentions "patient is also complaining of right ankle pain status post ankle fracture in 2000, status post internal fixation.  Patient complains that she has had constant swelling in that ankle since 2000." AR 111.

1
2
3
4

"[T]he claimant can lift and carry 20 lbs. occasionally and 10 lbs. frequently. She can stand and walk up to 6 hours in an 8-hour workday and sit for 6 hours in an 8-hours workday. The claimant is unable to walk on uneven terrain. Climbing, stopping, kneeling, and crouching are occasional. The claimant has some limitation above the shoulder activities in both shoulders. There are no other limitations." AR 82.

5
6

Plaintiff has not offered any alternative medical evidence to refute Dr. Kadaba's assessment of her ability to stand and walk, or otherwise move in the manner discussed.

7
8
9
10
11
12

In addition to the medical evidence, the ALJ considered plaintiff's participation in physical therapy for her right ankle condition.  Progress notes from May and June 2005 show recommendations by MLK for physical therapy and ankle exercises. AR 100, 102. It appears that during this time, plaintiff canceled her appointment twice, and participated in one physical therapy session.  There are no subsequent summaries pertaining to physical therapy.  Based on such a showing, the ALJ reasonably determined that plaintiff's claims were unsupported.

13
14
15

As shown by the record, the impairment asserted by plaintiff regarding her right knee and ankle does not meet or equal Listing 1.02.  The ALJ correctly determined that plaintiff does not meet the requirements of the 1.00 series of listings, nor any other listing.

16

17

Plaintiff's Assertion Regarding Obesity

18
19
20

In addition to the right knee and ankle conditions, plaintiff asserts that because she suffers from obesity, the ALJ should have considered it as a factor in determining whether she meets or equals Listing 1.02.

21
22
23
24
25
26

Obesity alone is no longer a listed impairment.  Although a claimant's obesity is no longer disabling in itself[2], it may be a factor in considering whether she meets or equals a listing. Social Security Ruling  02-1p.  It is the claimant's obligation to establish a connection between her excessive weight, impairments, and any relevant functional limitations. Burch v. Barnhart, 400  F.3d 676, 683 (9th  Cir. 2005). In  Burch, the Court stated, "An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an

27
28

---

[2]    At the time of the hearing, plaintiff  stated that her height was 5'6" and her  weight was 202 pounds. AR 167. Under the old criteria, plaintiff needed to weigh 274 pounds to meet the listing.

1   equivalency determination, unless the claimant presents evidence in an effort to establish

2   equivalence."  See also, Lewis v. Apfel, 236 F. 3d 503, 514 (9th Cir. 2001).

3          The claimant in Burch did not present evidence before the ALJ or in the record stating

4   that claimant's obesity limited her functioning.  No medical records addressed the impact of

5   obesity on claimant's condition or functioning.  At her hearing, the claimant did not present

6   evidence that her obesity impaired her ability to work. Burch, supra

7          Like the claimant in Burch, plaintiff  here was represented by counsel at the hearing. At

8   the  hearing, plaintiff did not offer testimony or evidence regarding any relevance between her

9   obesity and her right knee and ankle conditions. As the Appeals Council noted, the record "does

10  not support the existence of obesity as a medically determinable impairment." AR 6.  There are

11  no medical records that discuss the impact of plaintiff's weight on her condition.  No evidence in

12  plaintiff's medical record describes an inability to work due to obesity, neither as an independent

13  factor nor as a factor in a combined effect which further exacerbated her right knee and ankle

14  conditions.  Accordingly, the ALJ has satisfied his burden to adequately consider plaintiff's

15  assertions, and did not err in his decision.

16

17          ISSUE NO. 2:

18          Plaintiff asserts that the ALJ erred by failing to call a vocational expert to develop the

19  record with regard to the reaching requirements of plaintiff's past work as an assembler.

20  Plaintiff alleges an inconsistency between her own testimony and the description in the

21  Dictionary of Occupational Titles ("DOT") of her past work, as well as between the DOT's

22  description and the opinion of the vocational source.  DOT #706.687-010, AR 190, AR 124.

23  Plaintiff asserts that because of this inconsistency, a vocational expert should be called to

24  provide testimony.

25          Vocational experts and vocational specialists may provide evidence to be considered

26  during steps 4 and 5 of the sequential process. Social Security Ruling 00-4p.  When a vocational

27  expert provides evidence about a job or occupation, the ALJ must first determine whether such

28  evidence conflicts with the DOT.  If there is a conflict, the ALJ should determine whether the

7

1   vocational expert's explanation for the conflict is reasonable and whether a basis exists for

2   relying on the expert rather than the DOT.  <u>Massachi v. Astrue</u>, 486 F.3d 1149, 1153 (9th Cir.

3   2007).

4           In plaintiff's case, the DOT description of assembler required frequent reaching. DOT

5   #706.687-010.   Dr. Kadaba's opinion stated that plaintiff "has some limitation above the

6   shoulder activities in both shoulders. There are no other limitations." AR 82.  A vocational

7   decision guide prepared for plaintiff stated that "[b]ilateral overhead reaching is limited to occ."

8   AR 124. There is no medical or vocational record for plaintiff that supports a preclusion of all

9   reaching .

10          As defendant asserts, a conflict does not arise when a claimant is found to have the

11  capacity to perform an activity within a range identified in the DOT.  It is reasonable for the ALJ

12  to determine that based on the record, although plaintiff may not be able to frequently reach

13  overhead, she may perform other subsets of reaching to meet the demands of her former work as

14  it is generally performed.[3] AR 18, 19.  Accordingly, the ALJ was not required to call a

15  vocational expert for further development of the record and has not erred.

16  //

17  //

18  //

19

20

21

22

23

24

25

26

27

28  _____
    [3]    Plaintiff has testified that her former work as an assembler required constant overhead reaching. AR 190.
    Reasonable and substantial evidence supports the ALJ's determination that plaintiff can perform her former work,
    not as she described it, but as it is generally performed. AR 18, 19.

III. <u>ORDER</u>

     For the foregoing reasons, the decision of the Commissioner is affirmed and plaintiff's Complaint is dismissed.

DATED:  January 22, 2009

/ S /

_____

STEPHEN J. HILLMAN
UNITED STATES MAGISTRATE JUDGE